UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| G4S JUSTICE SERVICES, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-0945-SEB-JMS |
| | ) | |
| CORRECTIONAL PROGRAM SERVICES, | ) | |
| INC. et al, | ) | |
|     Defendant. | ) | |

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND PROPOSED MEMORANDUM OF DECISION REGARDING MOTION TO SET ASIDE DEFAULT JUDGMENT</u>**

This matter is before the magistrate judge on Defendants' Motion to Set Aside Default Judgment (Dkt. # 30). The motion is fully briefed, and an evidentiary hearing was conducted on June 10, 2008. Subsequently, the parties were permitted to submit closing arguments by brief, and both parties have done so. Being duly advised, the magistrate judge recommends the default judgment be set aside for the reasons set forth below.

**<u>Background</u>**

Plaintiff G4S Justice Services, Inc. ("G4S") filed suit on July 19, 2007 against Defendants Correctional Program Services, Inc. ("CPS"), Andrew Miller and Debbie Miller (collectively the "Defendants") alleging claims of breach of contract and replevin against CPS, fraud against all Defendants, and alter ego against the Millers. On August 8, 2007, G4S filed a Notice of Return of Service indicating all Defendants were served on August 2, 2007 (Dkt. #10). The notice consisted of a "Sheriffs' Return" from the Madison County Sheriff's Department indicating on a mostly preprinted form that the Defendants were served "[b]y leaving a copy and mailing a copy to the last and usual place of residence of the defendant Andrew and Debbie

Miller this 2 day of August, 2007." (Dkt. # 10,Ex. A).  Handwritten on the form was the following: "Advised by Andrew via telephone to put documents in the mail he travels for business and is gone most of the time.  Was at residence a couple of times left notices for them to contact my office. (left top page of summons, then mailed summons and complaint)." (Dkt. #10, Ex. A).

On August 30, 2007, G4S filed a Motion for Default Judgment, as Defendants had failed to timely appear and answer the Complaint.  On October 11, 2007, the Clerk entered default against the Defendants.  On October 17, 2007, Judge Sarah Evans Barker entered a default judgment against the Defendants.

On January 5, 2008, G4S filed a Motion to Enter and Enforce Writs of Execution Against Defendants as well as a Motion for Proceedings Supplemental.  The Motion for Proceedings Supplemental was granted the following day, while the Motion to Enter and Enforce Writs of Execution Against Defendants was stayed pending the proceedings supplemental.  As a result of the order granting the proceedings supplemental, interrogatories were sent to several Garnishee Defendants.

Upon receipt of the interrogatories, one of the Garnishee Defendants, the Washington County Probation Department, contacted the Millers to inform them of the receipt of the interrogatories.  The contact occurred on January 14, 2008 and Defendants allege that it was their first notice of lawsuit.  That same date, the Defendants secured counsel, and an appearance by counsel and the instant motion were filed on January 22, 2008, after counsel conducted a conflict check.

In support of this motion, Defendants submitted affidavits from both Millers wherein each declared under penalty of perjury that they had never received a summons, complaint or

any other document relating to this lawsuit by mail, hand-delivery or any other manner. (Def. Brief, Ex. A & C). They further declared that the first notice they received of this lawsuit was on January 14, 2008, when they received a faxed copy of the interrogatories sent to the Washington County Probation Department from Melanie Kuntz ("Kuntz"). (Def. Brief, Ex. A, part 2). At the hearing, both Millers testified to the same.

In response, G4S submitted a declaration from Cynthia L. Dixon ("Dixon"), the Madison County Sheriff's Deputy responsible for effectuating service of process in civil actions. According to her declaration, on July 24, 2007, she went to the Millers' residence to serve the summons and complaint. Finding no one at home, she posted a red sticker on the front door that informed the residents to contact her at the telephone number on the sticker. Her declaration further details her remaining attempts to serve the Defendants. However, at the hearing, Dixon testified that counsel for G4S wrote the declaration, and it was not "100 percent accurate."

Additional evidence presented at the hearing corroborated the Millers' affidavits. Subsequent to receiving the fax from Kuntz, Mrs. Miller engaged in an instant message conversation over the computer with her. Kuntz, who testified at the hearing that she has a law degree and is a non-practicing attorney, asked if they had received "anything from G4S or an attorney stating that they had filed suit against you? You should have gotten something that said 'complaint' at the top. Normally it comes by certified mail or served by Sheriff." (Hearing, Def. Ex. I, pg. 1). Mrs. Miller responded "we did not get anything certified mail or from the sheriff." (Hearing, Def. Ex. I, pg. 1). This conversation spans four written pages, and contains many expressions of surprise and fear about this lawsuit by Mrs. Miller.[1] Near the beginning of the

---

[1] For example, "I [sic] going to Puke," "I'm having a panic attack," "I'm scared to death." (Hearing, Def. Ex. I, pgs. 1 & 3).

conversation, Mrs. Miller states "andy is on the phone with an attorney in Indy now." (Hearing, Def. Ex. I, pg. 1).

Defendants presented additional evidence that during the same time period service of this lawsuit was attempted, they also received a tax notice from the Madison County Sheriff in the mail. (Hearing, Def. Ex. J). Mr. Miller testified that after he received the red sticker placed on his door by Dixon, he called the number on the sticker. He stated he was told to come down to the office, and nothing was said about a complaint, a lawsuit or G4S. It was his belief the sticker pertained to the tax notice. He went to the Madison County Sheriff's Office on July 27, 2007. He took the sticker as well as the tax notice with him and presented it to the deputy on duty. Dixon was not present. He was given the name and number of an individual named Chris to contact in the IRS office in Muncie regarding the tax issue. He was not given any documents nor was there any mention of the complaint and summons. Mr. Miller testified he did not contact the Sheriff's Department again nor did he receive anything else from it. The evidence established that Dixon worked in the same office where tax notice inquiries were handled.

Other relevant testimony from the hearing will be supplied as necessary.

**Discussion**

Defendants move, pursuant to Fed. R. Civ. P. 60(b), to set aside the earlier default judgment against them on the basis that they were not properly served, and therefore the Court does not have personal jurisdiction over them. Alternatively, if the Court determines that service was proper and it has personal jurisdiction over Defendants, they assert the default judgment should be set aside because (1) there was excusable neglect; (2) they took quick action to correct the default judgment; and (3) they have a meritorious defense to the original Complaint.

**I.  Defendants were not properly served**

**A. Inadequate proof of service**

The parties agree that because service was not in-hand as required by Fed. R. Civ. P 4(e), *Homer v. Jones-Bey,* 415 F.3d 748, 754 (7th Cir. 2005), validity of service is governed by Rule 4 of the Indiana Rules of Trial Procedure.  Service on individuals and corporations is governed by Rules 4.1 and 4.6, respectively.  Rule 4.1 provides:

> (A) In general Service may be made upon an individual, or an individual acting in a representative capacity, by: (1) Sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment or receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
>
> (2) Delivering a copy of the summons and complaint to him personally; or
>
> (3) Leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or
>
> (4) Serving his agent as provided by rule, statute or valid agreement.
>
> (B) Copy service to be followed with mail. Whenever service is made under subsection (3) or (4) of subdivision (A), the person making service also shall send by first class mail, a copy of the summons without the complaint to the last known address of the person being served, and this fact shall be shown upon the return.

Rule 4.6 provides that service upon a corporation may be made upon the executive officer or registered agent in the manner provided for under Rule 4.1.  Rule 4(E) also requires that the summons and complaint "shall be served together unless otherwise ordered by the court."  Ind. R. Tr. P. 4(E).  Valid service of process is required in order for the Court to assert personal jurisdiction over the Defendants. *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

G4S bears the burden of proving that personal jurisdiction over the Defendants exists, which necessarily includes proving valid service of process. *Homer,* 415 F.3d at 754, citing

*Claus v. Mize,* 317 F.3d 725, 727 (7th Cir. 2003). G4S claims that the Defendants were properly served, asserting that Dixon "credibly testified" that she left a copy of the summons and complaint at the Millers' residence and thereafter mailed a copy of the summons and complaint to the residence.[2] (G4S Closing, pgs. 3 & 4). Defendants counter that not only was Dixon's in-court testimony not credible, neither is her Declaration, and the Sheriff's Return is vague and ambiguous. Consequently, they conclude, the evidence does not establish that they were properly served and the default judgment should be set aside.

The Court concurs with the Defendants on all three points. First, the Sheriff's Return states only that the "top page of [sic] summons" was left at the residence on August 2, 2007. From Dixon's testimony, it is clear only one "top page" of a summons was left for one Defendant, not all three. Thus, only one of three Defendants could possibly have received the top page. Further, the Sheriff's Return indicates Dixon then "mailed summons + complaint" but does not specify if a copy of the summons and complaint was mailed to each Defendant. Regardless, Rule 4.1(A)(3) requires that a copy of *both* the summons and the complaint be left when service is by leaving a copy at a dwelling.

Next, Dixon's Declaration contradicts the Sheriff's Return. In it she states that she left the top copy of the summons at the residence not once, but twice. She then declares that she did, in fact, leave a copy of the summons *and* complaint at the residence on August 2, 2007. Most important, however, is Dixon's testimony that the Declaration is not "100 percent accurate" and was the "gist" of what happened. Dixon stated she chose not to make corrections of the inaccuracies.

Finally, Dixon's in-court testimony is simply not credible. Dixon testified she serves

---

[2]It is not disputed that Mr. Miller is the proper executive officer of CPS upon whom service could have been made pursuant to Rule 4.6, and that the Millers' residence is the address for CPS.

Case 1:07-cv-00945-JMS-TAB   Document 70   Filed 07/16/08   Page 7 of 15 PageID #: 687

probably 400-500 documents a month, ranging from evictions, replevins, subpoenas and the like. She stated she vaguely recalled this particular service, "sort of" remembered going out to the Millers' house, and was working off her memory and notes. While Dixon testified that, according to her notes, she spoke with Mr. Miller over the telephone, she also claimed he left her a voice mail message, which was not reflected in her notes. Upon further cross-examination by Defendants' counsel, it was revealed Dixon informed counsel in a conversation prior to the hearing that it was possible she never talked to Mr. Miller but rather only had a voice mail message from him. Dixon's testimony was peppered with similar instances of lack of memory and/or inconsistency.

Dixon's credibility was further damaged during questioning by defense counsel concerning his efforts to confer with her before the hearing. When first contacted by Defendants' counsel, Dixon indicated she would have to check with G4S' counsel to make sure it was "ok" for her to speak with Defendants' counsel because she wasn't sure if it would be a "conflict." She subsequently left a voice mail for Defendants' counsel, played during the hearing, indicating that G4S' counsel told her it would be a conflict for her to speak to Defendants' counsel. As a result she declined to confer with defense counsel. However, at the outset of her cross-examination, Dixon flatly denied making the statements contained on the tape. In what appears to the Court as a deliberate effort to minimize G4S' counsel's involvement, she testified that she said on the voice mail that *she* thought it would be a conflict. With this line of questioning, Dixon was impeached not only with respect to her truthfulness, but by her a display bias in favor of G4S' and its counsel.

It perhaps seems improbable that Defendants did not receive *any* of the documents pertaining to this lawsuit - the summons allegedly left by Dixon, the summons and complaint

allegedly mailed by Dixon, nor the multiple mailings pertaining to this matter sent by G4S' counsel (See G4S' Resp., Ex. 1, Declaration of Richard Darke).  However, the Millers testified about having problems receiving mail and deliveries by the USPS, UPS, FedEx and the like.  Significantly, the Millers' testimony regarding their lack of knowledge of this lawsuit was corroborated by the instant messages between Mrs. Miller and Kuntz, Mr. Miller's contact with Dixon's office concerning the tax notice with no mention being made of this lawsuit,  and the Millers' immediate attempts to secure counsel upon learning of the interrogatories sent to Kuntz.

While there clearly was some form of communication between Dixon and Mr. Miller,[3] either a telephone conversation or a voice mail or both, Dixon testified that she would not have informed him of the nature of the documents she intended to serve him.  She testified she would have let him know she had "something" for him but would not have identified that it was a summons, a complaint or a lawsuit, or even mention the name of the Plaintiff, G4S.  Therefore, the evidence before the Court leads to the reasonable inference that Mr. Miller believed his dealings with the Madison County Sheriff's Department and Dixon to be related to the tax notice he received, and not this lawsuit.

Dixon received three summonses and three complaints, one copy for each of the three Defendants. (Pl. Resp., Ex. D to Ex. 1).  She testified that she never made additional copies of the three summonses or complaints.  Yet she may have left the top page of a summons at Defendants' residence once or maybe twice, may have left a copy of a summons and complaint on August 2, 2007 (depending

---

[3]As noted earlier, the Sheriff's Return indicates Dixon was "advised by Andrew via telephone to put documents in the mail he travels for business and is gone most of the time." (Hearing, Pl. Ex. 1).  Mr. Miller similarly testified he travels frequently for CPS, a fact that would be unknown to Dixon had there not been some form of communication between the two.

upon which version of her actions is believed, her notes on the Sheriff's Return, her affidavit or her testimony), and then mailed a copy of a summons and complaint. Clearly, then, each Defendant could not possibly have received a copy of a summons and complaint either in person or by mail or both.

Whether due to lack of memory, faulty record keeping, bias, untruthfulness, or some combination, the veracity of Dixon's testimony was undermined by multiple impeachments and inconsistencies. The Sheriff's Return cannot be considered valid proof of service given its vague and ambiguous language and the inconsistency between it and Dixon's Declaration and in-court testimony. Her Declaration has no evidentiary value given her admission that she did not write it, it was not 100 percent accurate, and only captured "the gist" of what happened. The Court cannot, and does not, credit her testimony. Moreover, even if only Dixon's handwritten notes on the Sheriff's Return were considered, valid service was not had pursuant to Rule 4(E). Consequently, G4S has failed to meet its burden of proving proper service of Defendants under Rule 4.

**B.  Service does not satisfy Due Process or Ind. R. Trial P. 4.15(F)**

However, the analysis does not end here, for G4S asserts that "even assuming that Ms. Dixon merely left a copy of the Summons at the Property and mailed the complaint and summons, service of process remains valid because it comports with Due Process, " citing *Tabbert, Hahn, Earnest and Weddle, P.C. v. Lanza,* 94 F.Supp.2d 1010, 1012 (S. D. Ind. 2000). (Pl. Closing, pg. 5).

"The Due Process Clause of the Fourteenth Amendment requires that service of process be reasonably calculated both to apprise a party of the pendency of an action and to provide it with an opportunity to respond." *Swaim v. Moltan Co.,* 73 F.3d 711, 720 (7th Cir. 1996). The due

process requirement has been codified in Ind. R. Trial P. 4.15(F) in the form of a savings clause calculated to cure harmless defects in service. It states that "[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." Ind. R. Trial P. 4.15(F).

In *Swaim,* the Seventh Circuit stated that "service of process that is reasonably calculated to inform, consistent with the letter of Trial Rule 4.15(F), is sufficient even if it fails to actually inform the party to which it is directed." *Id.* at 721. However, more recently, in *Homer v. Jones-Bey,* 415 F.3d 748, 757 (7th Cir. 2005)*,* the Seventh Circuit explained that such broad language generally appears in cases where actual notice of the lawsuit is not at issue, or where the defendant has avoided proper attempts at service. "Thus, while technical shortcomings in service may be excusable (especially where the party to be served has actual notice of the lawsuit), a complete failure of service is not." *Id.* "[T]he saving effect of T.R. 4.15(F) is inapplicable if there has been absolutely no service upon [the defendant]" because Rule 4.15(F) "presupposes that there has been at least some kind of service upon the party." *Idlewine v. Madison County Bank & Trust Co.,* 439 N.E.2d 1198, 1201 (Ind. Ct. App. 1982)(quoting *Southern Indiana Ry. Co. v. Indianapolis & L.R. Co.,* 81 N.E. 65, 66 (Ind. 1907).

Therefore, the question here is whether the deficiency in the attempted service of the Defendants was purely technical, and thus saved by Rule 4.15(F), or whether there was a complete failure of service.

Presumably, G4S cites *Tabbert* because its facts are somewhat similar to this case. In *Tabbert,* the defendants, Mr. and Mrs. Lanza, were served via certified mail with summonses but no complaints. Mr. Lanza then wrote to the court stating they could not answer the complaint

because they were not provided a copy of it.  Thereafter, the clerk of the court sent copies of the summonses and complaints to the Lanzas via certified mail, and completed a "Certificate of Mailing" certifying that she had done so.  Several months later, after several extensions, the Lanzas failed to file an answer, and a default judgment was entered against them.

However, the Lanzas later alleged that they were never served with the complaint, which was of course disputed by the clerk of the court's certification.  The court assumed, for purposes of argument, that the Lanzas were only served with the summonses.  Based upon the information contained on the summonses, the Court determined that "service of the Summonses alone was sufficient for effective service of process" pursuant to Rule 4.15(F) and the Due Process Clause of the Fourteenth Amendment. *Id.* at 1013.

Perhaps, were the Court to assume, as in *Tabbert,* that at the very least, one copy of the "top page" of the summons was left by Dixon at the Millers' residence, the failure to leave a copy of the complaint could be considered a mere technical defect.  However, given that only one copy was left and there are three Defendants, clearly there was a complete failure of service as to two of the Defendants.  Which two, of course, cannot be determined.  As the Court cannot guess as to which one was served, the Court must presume a complete failure of service as to all three.  Furthermore, given the Court's determination that Dixon's testimony cannot be credited, her Declaration is similarly untrustworthy, and the Sheriff's Return is contradicted by both, the Court is unwilling to make even the basic assumption that the top page of a summons was left at the Millers' residence.  As such, this matter is distinguishable from *Tabbert* in that it was undisputed the Lanzas had actually received the summonses

Based on all of the foregoing, the Court is unable to conclude that Defendants were served by any method of service of the summons and/or complaint which comports with the due process

requirements of the Fourteenth Amendment nor the saving effect of Ind. R. Tr. P. 4.15(F).

## II.  The Judgment Should be Set Aside Pursuant to Rule 60(b)

Even if the Court had determined that service was effective, the default judgment should be set aside pursuant to Fed. R. Civ. P. 60(b).  The relevant portion of Rule 60(b) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . " While relief pursuant to Rule 60(b) is an "extraordinary remedy and is granted only in exceptional circumstances," *McCormick v. City of Chicago,* 230 F.3d 319, 327 (7th Cir. 2000), "[t]his Circuit has a well established policy favoring a trial on the merits over a default judgment."  *Sun v. Bd. of Tr. of Univ. of Ill.,* 473 F.3d 799, 811 (7th Cir. 2007).  A default judgment is a "weapon of last resort, appropriate only when a party wilfully disregards pending litigation." *Id.*

"Default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful."  *A.F. Dormeyer Co. v. M.J. Sales & Distrib. Co.,* 461 F.2d 40, 43 (7th Cir. 1984). The Rule 60(b) analysis has since developed into a three-part test which places the burden on the moving party to show (1) good cause or excusable neglect for the default, (2) quick action to correct the default, and (3) the existence of a meritorious defense to the original complaint.  *Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir. 1994).

The Millers' testimony, as well as the instant message conversation between Mrs. Miller and Kuntz, established Defendants had no knowledge of this lawsuit before January 14, 2008, and did not willfully disregard it.  Thus, good cause for the default, in the form of lack of knowledge of the lawsuit, exists.  Certainly, upon learning of this matter, Defendants took prompt action in

hiring an attorney and filing the instant motion.

The testimony at the hearing established the Defendants have defenses to the Complaint. A meritorious defense is "not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Id.* at 165 (citing *Merrill Lynch Mortg. Corp v. Narayan,* 908 F.2d 246, 252 (7th Cir. 1990). The defenses asserted by Defendants meet this standard.

G4S alleged claims of breach of contract and replevin against CPS, fraud against all Defendants, and alter ego against the Millers. Defendants presented evidence that G4S breached the contract between it and CPS by failing to monitor offenders, delays in reporting violations, and other failures in its service. As for the replevin claim, Mrs. Miller also testified that all of G4S' equipment has been returned. Even if it had not been, Jim Walker testified that at the time G4S acquired the division of ADT (by whom he was employed at the time of G4S' acquisition) that included the monitoring equipment at issue, 40% of the inventory was unaccounted for, and therefore, G4S cannot know what equipment is outstanding.

With its fraud claim, G4S alleged the Millers falsely represented that CPS had the ability to pay amounts coming due and past due pursuant to the contract. Defendants denied any such promises were made, and presented evidence of their payment history showing they had continued to pay G4S on the same schedule it had always paid under the contract. The Millers' uncontroverted testimony was that CPS was adequately capitalized to pay its liabilities. That same testimony established that CPS maintains corporate records and a separate bank account from the Millers with no commingling of funds, thus presenting a valid defense to G4S' efforts to pierce the corporate veil and pursue an alter ego claim.

Significant evidence was also introduced that the amount of damages G4S received by default may exceed that to which it may be entitled . As discussed, Defendants maintain all of the equipment has been returned to G4S. In addition, some "unreturned" equipment may be equipment that was "unaccounted for" when G4S acquired the business. G4S may not have satisfied its obligations pursuant to the contract, and may not be entitled to the full value of services alleged in the Complaint.

In sum, Defendants have met their burden of proving good cause for the default, quick action to correct it, and meritorious defenses that raise a serious question regarding the propriety of a default judgment that are supported by a developed legal and factual basis. Accordingly, the default judgment should be set aside pursuant to Rule 60(b).

**Conclusion**

Based on all of the circumstances discussed, the Court's interest in deciding cases on the merits is best served by vacating the default judgment. Therefore, the magistrate judge recommends the default judgment be set aside, and Defendants' motion should be **GRANTED.**

07/16/2008

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Distribution:

Andrew Lorin Campbell
BAKER & DANIELS
andrew.campbell@bakerd.com,denise.fort@bakerd.com

Richard Patrick Darke
DUANE MORRIS LLP
rpdarke@duanemorris.com,ganaya@duanemorris.com

John Joseph Tanner
BAKER & DANIELS
jjtanner@bakerd.com,susan.trenary@bakerd.com